IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Lacy Covington, ) | Case No. 3:22-cv-3328-JDA |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| Haile Gold Mine, Inc., d/b/a ) | |
| OceanaGold-Haile Gold Mine, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on a motion for summary judgment filed by Defendant. [Doc. 21.] In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), D.S.C., this matter was referred to United States Magistrate Judge Shiva V. Hodges for pre-trial proceedings.

On September 8, 2023, the Magistrate Judge issued a Report and Recommendation ("Report") recommending that the motion for summary judgment be granted. [Doc. 24.] The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. [*Id*. at 27.] Plaintiff filed objections to the Report on September 22, 2023 [Doc. 26], and Defendant filed a reply on October 6, 2023 [Doc. 28].[1]

**STANDARD OF REVIEW**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976).

---

[1] The case was reassigned to the undersigned on February 15, 2024.

The Court is charged with making a de novo determination of only those portions of the Report that have been specifically objected to, and the Court may accept, reject, or modify the Report, in whole or in part.  28 U.S.C. § 636(b)(1).  The Court will review the Report only for clear error in the absence of an objection.  *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" (internal quotation marks omitted)).

## **BACKGROUND**

In ruling on a motion for summary judgment, this Court reviews the facts and reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).  The Magistrate Judge provided an accurate and thorough recitation of the facts and, therefore, the Court includes only the factual information necessary to address Plaintiff's objections.  Viewed in the light most favorable to Plaintiff, the summary judgment record reveals the following facts.

Plaintiff began working for Defendant, a gold mining operation in Kershaw County, South Carolina, on October 5, 2020.  [Docs. 1-1 ¶¶ 2, 5; 4 ¶¶ 2, 5; 21-1 ¶ 2.]  Plaintiff's primary responsibilities involved transporting materials at the mine in a large Caterpillar 730 three axle haul truck, and part of her onboarding included driving with a trainer for approximately three weeks.  [Docs. 21-1 at 2 (22:5–14); 22-3.]  Defendant first assigned

Plaintiff to ride with Leonard Motes[2] on October 14, 2020, and again on October 16, 2020. [Doc. 22-1 at 18 (66:3–12).]  Plaintiff completed a written statement prior to this litigation describing Motes' conduct, including several instances of alleged sexual assault and harassment.  [Doc. 22-3.]  Plaintiff also testified that Defendant's shovel operator made a sexist comment towards her and urinated in front of her and that there were graphic sexual drawings inside the women's port-a-potty.[3]  [Doc. 22-1 at 20–21 (76:19–22; 77:19–78:4); 25–26 (106:22–107:12).]

On October 21, 2020, Plaintiff reported being sexually harassed and assaulted by Motes to her supervisor, Chad Warnken, who immediately informed management and an emergency meeting was held.  [Doc. 21-2 ¶¶ 3–4.]  Following the October 21, 2020, meeting, Defendant contacted Motes' employer, Motes was removed from the site, and his security access was disabled.  [*Id*. ¶ 5; Doc. 21-1 at 16 (40:1–15) (Plaintiff confirming at her deposition that Motes was escorted from Defendant's property the day after she accused him of harassment).]

---

[2] Defendant has submitted evidence that Leonard Motes was an independent contractor employed by GMS Mine Repair.  [Doc. 21-2 ¶ 3.]

[3] Plaintiff testified that she reported the graffiti in the women's restroom to management in late October or early November 2020 [Doc. 21-1 at 39 (79:4–18), 43 (107:13–23)], but Defendant asserts that Plaintiff did not complain about the inappropriate image at any time during her employment [Doc. 21-2 ¶ 9].  Defendant has also submitted evidence that Plaintiff did not report the alleged sexist remark to management at any time during her employment, and the Magistrate Judge found that Plaintiff does not dispute this evidence. [*Id*. ¶ 10; Doc. 24 at 6; *see also* Doc. 21-1 at 25 (65:4–10), 36–37 (76:23–77:3) (Plaintiff's testimony that she never reported the alleged sexist statement or any harassment by anyone other than Motes).]

3

On January 7, 2021, Plaintiff received a 90-day performance evaluation from her supervisor, Michael Parsley.  [Doc. 22-10.]  On a scale of 1 to 4, with 1 being the lowest score and 4 the highest, Plaintiff was rated as follows:

> 3 – Operating in Pit Areas
> 2 – Situational Awareness (Comments: "Not always consistent")
> 2 – Effectiveness (Comments: "Sometimes has to re-spot under shovel")
> 3 – Communication (Comments: "Occasionally communicates information, not consistent")
> 3 – Operating in Dump Areas
> 2 – Basic Operations (Comments: "Challenged by wet and muddy conditions. With time may overcome.")
> 3 – Loaded Operations
> 4 – Understanding
> 3 – Equipment Management
> 2 – Time Management
> 4 – Documentation (Comments: "When load sheets are required she does the[m] correctly")
> 1 – Leadership (Comments: "Lacy does not miss work and acts appropriate. She does not always call out hazards, speak up or give constructive feedback in line out. Lacy needs to speak up more and show more leadership.")
> 3 – Equipment Knowledge

[*Id*. at 2–5.]  Her supervisor also commented that she "has adapted well . . . is willing to learn and listens to other experienced operators . . . [and] needs to call out more hazards [and] speak up in the line up." [*Id*. at 5.]  The general foreman commented that she "needs additional experience and to be more interactive with the rest of the crew" but "[s]hould continue to improve with time."  [*Id*.]  Plaintiff's supervisor wrote "no change" on the evaluation, meaning she would not receive a promotion or raise at that time.  [*Id*. at 2; Doc. 21-2 ¶ 12.]

On January 20, 2021, Plaintiff's employment was terminated because of complaints allegedly received from other drivers stating that she took unsafe actions while

4

operating a haul truck. [Docs. 21-2 ¶ 13; 22-6.] Her termination letter stated that Defendant had "received five written concerns/complaints of unsafe actions while [Plaintiff was] operating a haul truck." [Doc. 22-6.] Defendant has submitted what it purports to be three handwritten complaints, two of which describe an incident that allegedly occurred in late December 2020 in which Plaintiff nearly flipped over the truck she was driving and a majority of the load she was carrying flew out of the back of the truck as she attempted to dump the truck into a dozer. [Doc. 21-2 ¶ 14; *id*. at 12, 14, 16.] In support of its claim that Plaintiff was fired for unsafe driving, Defendant also submitted an unsigned and incomplete witness statement describing an incident on January 18, 2021, and an affidavit from a current employee stating that Plaintiff was not a safe driver. [*Id*. at 18–19; Doc. 21-4.]

## DISCUSSION

The Magistrate Judge recommends granting Defendant's motion for summary judgment because there is no genuine dispute of material fact as to Plaintiff's claims for sexual harassment and retaliation under Title VII. [Doc. 24.] The Court addresses these claims seriatim.

**Title VII Sexual Harassment Claim**

The Magistrate Judge concluded that there is no genuine dispute of material fact as to Plaintiff's cause of action for sexual harassment because Plaintiff cannot prove that the harassing conduct was imputable to the employer. [*Id*. at 15–20.]

The Magistrate Judge correctly explained in the Report that to establish a prima facie case of hostile work environment sexual harassment under Title VII, "a plaintiff must prove: (1) unwelcome conduct; (2) based on the plaintiff's sex; (3) sufficiently severe or

5

pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) that is imputable to the employer." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 117 (4th Cir. 2021); [Doc. 24 at 15]. The Magistrate Judge focused on the last element, "imputable to the employer," because it is dispositive. [Doc. 24 at 15.]

As explained in the Report, an employer may be liable for the harassing behavior of its employee in one of two ways. [*Id*. at 15–16.] First, if the plaintiff demonstrates that the harasser is the plaintiff's supervisor, then the employer is strictly liable for harassment culminating in a "tangible employment action." *Boyer Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 278 (4th Cir. 2015) (en banc). Second, if the harasser is a coworker rather than a supervisor, then the employer may be held liable only if the employer "knew or should have known about the harassment and failed to take effective action to stop it." *Pryor v. United Air Lines, Inc.,* 791 F.3d 488, 498 (4th Cir. 2015) (internal quotation marks omitted). The Magistrate Judge concluded that there was no supervisory liability because Motes was not Plaintiff's supervisor and that there was no coworker liability because the evidence does not support a finding that Defendant knew or should have known about Motes' alleged harassment of Plaintiff and failed to take corrective action. [Doc. 24 at 18.]

In her objections, Plaintiff focuses solely on the Magistrate Judge's conclusions on supervisor liability, arguing that Motes was Plaintiff's "supervisor" for the purposes of liability, and thus strict liability should apply to Defendant. [Doc. 26 at 4–5.] Plaintiff asserts that Motes had the authority to take "tangible employment actions" against Plaintiff under *Vance v. Ball State University,* 570 U.S. 421 (2013), because he could

6

have designated her as failing his portion of the training, which would have led to her termination or reassignment. [Doc. 26 at 4–5.] The Court disagrees.

In *Cooper v. Smithfield Packing Co.*, 724 F. App'x 197 (4th Cir. 2018), the Fourth Circuit declined to confer supervisory status on the plaintiff's superintendent because he "was neither involved in nor had the authority to hire or fire [the plaintiff], or make any like-kind employment decisions. At best, [the superintendent] provided informal evaluations of [the plaintiff] to the HR department, and seemingly had some input regarding vacation days and her work schedule." *Id.* at 203. The Court reiterated that "a supervisor under Title VII is a person empowered by the employer to take tangible employment actions against the victim" and that "specifically, the individual must possess the power to hire, fire, demote, promote, transfer, or discipline the plaintiff." *Id*. The Court explained that "[b]y contrast, those who, although lacking this power, nevertheless have the ability to direct a co-worker's labor to some ill-defined degree are not supervisors." *Id*. (internal quotation marks omitted).

Here, Plaintiff has forecasted no evidence that Motes had the authority to hire, fire, or take any other tangible employment actions against Plaintiff. Rather, Motes conducted two training sessions with Plaintiff at the beginning of her employment. [Doc. 22-1 at 18 (66:3–12).] Indeed, as the Magistrate Judge noted, Plaintiff has forecasted no evidence that Motes' or similar trainers' evaluations could even lead to tangible employment actions against trainees like Plaintiff. [Doc. 24 at 17.] And in her objections, Plaintiff has failed to direct the Court to any such evidence. Instead, she contends that "[c]ommon sense dictates that if a trainee for a job is designated as having failed training by their trainer, that person will either be 1) terminated, or 2) reassigned to another job." [Doc. 26 at 5.]

7

Accordingly, applying *Cooper*, this Court agrees with the Magistrate Judge that Motes was not Plaintiff's supervisor, overrules Plaintiff's objections as to her Title VII sexual harassment claim, and grants summary judgment to Defendant on this claim. [*Id*. at 15–18.]

**Title VII Retaliation Claim**

The Magistrate Judge concluded there is no genuine dispute of material fact as to Plaintiff's Title VII retaliation claim because Plaintiff has failed to demonstrate that Defendant's proffered reason for her termination—reports of unsafe driving—is a pretext for unlawful discrimination. [Doc. 24 at 20–26.]

*Legal Standard*

In the Report, the Magistrate Judge correctly explained the *McDonnell Douglas* burden-shifting framework that applies here. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). A plaintiff may prove a Title VII retaliation claim either through direct evidence of retaliatory animus or via the application of the *McDonnell Douglas* burden-shifting framework. *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021). Finding no direct evidence of retaliatory animus, the Magistrate Judge proceeded under the *McDonnell Douglas* framework. [Doc. 24 at 21.]

To succeed on a Title VII retaliation claim, a plaintiff must make a prima facie case of retaliation. *Strothers v. City of Laurel*, 895 F.3d 317, 327–28 (4th Cir. 2018). After a prima facie case is made, the burden shifts to the employer to show that it took adverse action for a legitimate non-retaliatory reason. *Roberts,* 998 F.3d at 122. If the employer makes this showing, the burden shifts back to the plaintiff to rebut the employer's evidence by demonstrating the employer's purported non-retaliatory reasons were pretext

for retaliation.  *Id.*  At this final stage, "the *McDonnell Douglas* framework—with its presumtions and burdens—disappear[s]," and the "employee must prove" that "the legitimate reasons offered by the defendant[ ] were not its true reasons, but were a pretext for" retaliation.  *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 726 (4th Cir. 2019) (internal quotation marks omitted).  This analysis "demand[s] proof at the pretext stage that retaliation was a but-for cause of [the] challenged adverse employment action." *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 252 (4th Cir. 2015).  "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully" retaliated.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).  "Proof that the defendant's explanation is unworthy of credence is . . . one form of circumstantial evidence that is probative of [retaliation] . . . [and i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a [retaliatory] purpose."  *Id*. at 147.

### *Plaintiff's Objections*

In her objections to the Report, Plaintiff primarily argues that the Report fails to correctly analyze evidence (or the lack of evidence on particular points) that supports her claim of pretext.  [Doc. 26 at 6–8, 10–14.]  For example, Plaintiff argues that the Report "fails to acknowledge the implausibility that Plaintiff would allegedly almost flip a 100,000-pound mining vehicle in an active mining area in front of her co-workers, but then receive a positive evaluation and be allowed to continue working for another month."  [*Id*. at 7.]  As stated, Defendant contends that it terminated Plaintiff because of complaints received from several employees stating that she was an unsafe driver.  [Doc. 21 at 17.]  Two of

9

the complaints reference an incident in which Plaintiff backed a large truck into a hole so fast that 75% of the load flew out of the back of the truck and its front tires came up off the ground, causing at least one coworker to scream over the radio and tell Plaintiff to slow down and another coworker to fear that she would flip the truck.  [Doc. 21-2 at 12, 16.]  Plaintiff argues in her objections that it is "preposterous" to believe that, following this dramatic incident, Defendant would describe Plaintiff as a safe driver in her 90-day evaluation and would fail to mention that the incident even occurred.  [Doc. 26 at 8.]

Plaintiff further argues that the Report fails to consider Plaintiff's evidence of her prior successful evaluation and the lack of evidence of any prior disciplinary action as evidence of pretext.  [*Id*. at 11–13].  She also argues that the Report "fails to acknowledge the lack of any contemporaneous statement, email, text message, calendar entry, evaluation, form, photograph, video, or recording of the alleged instances of unsafe driving by Plaintiff."  [*Id*. at 8–9.]

Similarly, Plaintiff argues that Defendant's failure to conduct an investigation into the allegations used to terminate Plaintiff is evidence that the termination would not have occurred but for a retaliatory motive.  [*Id*. at 13]; *see Ion v. Chevron USA, Inc.*, 731 F.3d 379, 395 (5th Cir. 2013) (holding that failure to conduct "even the most cursory investigation" into the allegations used to terminate the plaintiff "calls into doubt [the defendant]'s reasonable reliance and good faith on [the] statements, and, at the very least, creates a fact issue as to whether it would have terminated [the plaintiff] despite its retaliatory motive").  Defendant's stated reason for terminating Plaintiff was that it received complaints from employees in December 2020 and January 2021 regarding

10

Plaintiff's unsafe driving,[4] yet there is no evidence that Defendant investigated these claims or attempted to gather any evidence to substantiate them. [*Id*. at 8–9; 13–14.]

Finally, Plaintiff argues that there is no evidence showing the written employee complaints were in existence at the time of her termination, and that at least one of the complaints allegedly considered when terminating Plaintiff was written weeks after her termination. [*Id*. at 10–11.]

*Analysis*

As stated above, in demonstrating that an employer's reason was pretext, a plaintiff's or employee's "prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully [retaliated]." *Reeves*, 530 U.S. at 148. "Proof that the defendant's explanation is unworthy of credence is . . . one form of circumstantial evidence that is probative of [retaliation] . . . [and i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a [retaliatory] purpose." *Id*. at 147.

This case presents a close call, and after conducting a careful review of the Report in light of Plaintiff's objections, the record, and the relevant law, the Court concludes that a genuine dispute of material fact exists as to whether Defendant unlawfully retaliated

---

[4] Plaintiff additionally asserts that the Report misconstrues Defendant's motion for summary judgment and incorrectly determines that Defendant does not argue that Plaintiff's 90-day evaluation was a basis for her termination. [Doc. 26 at 9–10.] Plaintiff asserts that Defendant has attempted to use the 90-day evaluation as reason for termination in this lawsuit, and because it did not use it as reason for termination at the time Plaintiff was terminated, its usage now is evidence of pretext. [*Id*.]; *see EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852–53 (4th Cir. 2001) (holding that an employer providing different justifications for termination, at different times, is probative of pretext).

against Plaintiff.  More specifically, the Court concludes that a trier of fact could determine that Defendant's proffered explanation is unworthy of credence and could infer from that falsity the ultimate fact of retaliation.

Plaintiff began working for Defendant on October 5, 2020, and on October 21, 2020, she reported being sexually harassed and assaulted by Motes to her supervisor. [Doc. 21-2 ¶¶ 2–3.]  Plaintiff has also testified that she reported to management sexually graphic images in the women's restroom in late October or early November 2020.  [Doc. 21-1 at 39 (79:4–18), 43 (107:13–23).]  Approximately two and a half to three months after Plaintiff made these reports, Defendant terminated her on January 20, 2021, allegedly based on written complaints it received regarding her unsafe driving.  [Docs. 21-2 ¶ 13; 22-6.]

However, a jury could reasonably find that Defendant's conduct strongly indicated that it was not genuinely concerned with the complaints, even if they existed at the time of Plaintiff's termination and were accurate.  It is important to emphasize that two of the complaints describe an incident that occurred *before* Plaintiff received her 90-day review, and in the incident described, Plaintiff nearly flipped over the truck she was driving and a majority of the load she was carrying flew out of the back of the truck as she attempted to dump the truck into a dozer.  [Doc. 21-2 ¶ 14; *id*. at 12, 16.]  Despite the obvious seriousness of the incident described, Plaintiff testified that Defendant never notified her of any safety concerns regarding her driving—not through verbal feedback, evaluations, or disciplinary action.  [Doc. 22-1 at 26 (110:1–9).]

A factfinder could reasonably find it implausible that Defendant would simply terminate Plaintiff over concerns regarding her driving before taking any other corrective

step and could reasonably conclude that simply allowing Plaintiff to continue driving with no attempts to address any problem raised in the employee complaints and then abruptly terminating her for unsafe driving would be an unlikely response. *See Cade v. Astrue*, No. 2:11-cv-03498-PMD-BM, 2014 WL 4635568, at *6 (D.S.C. Sept. 15, 2014) (holding that a reasonable jury could infer that if the defendant terminated the plaintiff due to performance issues, it "would have attempted to utilize some corrective or progressive disciplinary measures prior to terminating Plaintiff").

In addition to the absence of evidence of any corrective measures in response to the complaints or the incident itself, Plaintiff also forecasted evidence of actions that Defendant *did* take that undercut its claim that it terminated her for concerns over her driving. Specifically, a factfinder could reasonably view Plaintiff's 90-day evaluation as indicating that Defendant affirmatively approved of Plaintiff's driving. In that evaluation, Plaintiff received a score of 3 out of 4 in "Operating in Pit Areas" and was described as "safely and efficiently [maneuvering] under the load unit," and scored a 3 out of 4 in "Operating in Dump Areas" and was described as "approach[ing] dumps in a safe and efficient manner." [Doc. 22-10 at 2–3.] She was further described as being "mindful of hazards" and trying "to avoid damaging situations," and the evaluation does not include any mention of an incident similar to those described in the employee complaints. [Doc. 22-10.] A reasonable factfinder could conclude that Defendant would not have described Plaintiff's performance in those terms had the incident in question actually been reported and, indeed, that the incident would likely have been mentioned in the evaluation. *See Moss v. City of Abbeville*, 740 F. Supp. 2d 738, 746–47 (D.S.C. 2010) (holding that "[a] reasonable jury could conclude that the [defendant]'s stated reason for termination is

13

merely pretext for retaliation" when the plaintiff was allegedly terminated for poor performance despite the fact that he had a satisfactory performance record until the date of his termination).

Also, despite Defendant's claim that the termination was based in part on the written complaints it submitted, the Court notes that none of the complaints are dated, and Plaintiff has presented evidence that at least one of these complaints was written *after* Plaintiff was terminated.  [Docs. 22-7; 26 at 11.]  It can be inferred that none of these complaints were received prior to Plaintiff's 90-day evaluation on January 7, 2020 (or else their contents likely would have appeared on the evaluation), and thus in order to have informed Defendant's decision to terminate Plaintiff, all of the complaints would have been written within a few weeks of each other.  The evidence surrounding the timing of the complaints would give a jury additional reason to question whether the complaints were genuine and an actual basis for Plaintiff's termination.

Given all of these reasons to question the credibility of Defendant's proffered reason for termination, combined with the evidence that Plaintiff complained of harassment to Defendant on multiple occasions only two and a half months prior to her termination, the Court concludes that a reasonable jury could find that Defendant unlawfully retaliated against Plaintiff.  *See Reeves*, 530 U.S. at 148.

## **CONCLUSION**

For the reasons discussed, the Court accepts in part and rejects in part the Report and Recommendation of the Magistrate Judge and incorporates it herein by reference to the extent it is inconsistent with this Order.  Accordingly, Defendant's motion for summary

judgment [Doc. 21] is GRANTED as to the sexual harassment claim and DENIED as to the retaliation claim.

    IT IS SO ORDERED.

s/ Jacquelyn D. Austin<br>United States District Judge

May 15, 2024
Columbia, South Carolina